UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LORIA M. REESE, | ) | CIVIL ACTION 4:10-cv-1929-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**I.  PROCEDURAL HISTORY**

Plaintiff, Loria M. Reese, filed an application for DIB on March 23, 2007, with an alleged onset of disability of August 28, 2006.  Plaintiff requested a hearing before an administrative law judge (ALJ) after her claims were denied initially and on reconsideration.  At Plaintiff's request, an ALJ conducted a hearing on June 5, 2009, at which Plaintiff and a vocational expert (VE) appeared and testified. On August 12, 2009, the ALJ issued a decision finding that Plaintiff was not disabled.

In deciding that the Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:   (Tr. 10-18).

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since August 28, 2006, the alleged onset date. (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift or carry no more than ten pounds occasionally and less than ten pounds frequently with only occasional stooping, balancing, crouching, kneeling, and climbing of stairs or ramps with no crawling or climbing of ladders or scaffolds.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 5, 1960, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart 4, Appendix 2).

>    10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
>    11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 28, 2006, through the date of this decision (20 CFR 404.1520(g)).

( Tr. 12-18).

After the Appeals Council denied Plaintiff's request for review (Tr. 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). Plaintiff filed the instant action on July 26, 2010.

In her brief, the Plaintiff raises the following issues, quoted verbatim:

>    A.   In evaluating the Plaintiff's subjective symptoms, the ALJ failed to properly apply the credibility factors set forth in SSR 96-7p and completely ignored entire portions of the medical and vocational evidence.
>
>    B.   Having conceded that Plaintiff could not return to her past relevant work, the ALJ failed to meet his burden of proof to show that Plaintiff could perform other jobs: Even assuming that the limitations posed in his hypothetical were supported by substantial evidence, the jobs identified by the VE in response were semiskilled in nature, there was no showing that Plaintiff had acquired any occupational skills which were transferable to those jobs, and the ALJ made a specific finding that transferability of skills was not material.

(Plaintiff's brief).

The Commissioner contends that the ALJ did not commit any error and urges that substantial evidence supports the determination that the Plaintiff was not disabled. Under the Act, 42 U.S.C. Section 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by

substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent her from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the Plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## II. FACTUAL BACKGROUND

The Plaintiff was born on July 5, 1960, and was forty-eight years of age at the time of her hearing before the ALJ. (Tr. 25, 106). Plaintiff has a high school education and past work experience as an administrative specialist for the South Carolina Worker's Compensation Commission for almost eighteen years. (Tr. 26, 31). Plaintiff alleged disability due to a back injury with lumbar fusion.[1]

## III. ARGUMENTS AND ANALYSIS

Plaintiff argues the ALJ failed to properly apply the credibility factors and completely ignored entire portions of the medical and vocational evidence. Specifically, Plaintiff asserts the ALJ erred in ignoring her medical records from Doctors Care, Progressive Physical Therapy, and HealthSouth Physical Therapy which comprised 72 pages of the medical evidence. Plaintiff argues that " . . . the ALJ cites the SSR 96-70 factors and briefly summarizes Plaintiff's testimony regarding her daily routine and symptoms but he fails to apply the Ruling's mandate to consider all pertinent nonmedical factors once the first prong of the two-part Craig test is met." (Plaintiff's brief, p. 7). Plaintiff asserts the ALJ's summary of the medical evidence begins and ends with Dr. Holbrook's records of treatment from 2006 until January 2008. Plaintiff further asserts she submitted

---

[1] Plaintiff receives state retirement disability. (Tr. 39).

a July 2007 vocational report of Gerald N. Hinson, M.Ed. which "stands as the only evidence of actual vocational testing in the record, and revealed Plaintiff manifested ongoing symptoms of pain, unsteadiness on her feet, and progressively deteriorating ability to concentrate and perform finger and manual dexterity during test procedures." (Plaintiff's brief, p. 8). Plaintiff contends the name of the VE, Mr. Hinson, appears no where in the ALJ's decision, and he never mentions the vocational report. Plaintiff argues that Mr. Hinson's report is "precisely an example of the 'other sources of information' about credibility which must be considered by the ALJ under SSR 96-7. . ." (Plaintiff's brief, p. 8).

The Commissioner asserts that there is substantial medical evidence to support the decision of the ALJ. The Defendant argues that "[w]hile the Commissioner acknowledges the ALJ should have discussed the report (Hinson's report), his failure to do so was not fatal, as his decision remained supported by substantial evidence, and the omitted opinion would never have been entitled to significant weight." (Defendant's brief, p.11). Defendant further asserts that to the extent Plaintiff alleges the ALJ erred by not specifically addressing records from Doctor's Care, HealthSouth Physical Therapy, and Progressive Physical Therapy, "[t]he ALJ was not required to discuss every piece of evidence in his decision; indeed, were he to do so his decision might have been the length of the administrative record, and the fact that he did not discuss a particular item of evidence does not mean he failed to consider it." (Def.'s brief, p. 12). Defendant contends the records from the above named entities contained no additional opinions on Plaintiff's functional limitations, and do not indicate Plaintiff would have been unable to perform the minimal physical demands of a limited range of sedentary work. (Id. at 12).

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The ALJ found at step one under Craig that Plaintiff had impairments capable of producing the symptoms that she alleged and, accordingly, proceeded to step two. Plaintiff, however, complains that the ALJ failed to follow established procedures in performing this assessment. The undersigned agrees.

The ALJ concluded Plaintiff's testimony was not credible and stated the following:

> The evidence shows that the claimant has documented degenerative disc disease of the lumbar spine. On July 5, 2006, the claimant

7

underwent a lumbar epidural steroid injection. In August 2006, records from Thomas J. Holbrook, Jr., M.D. of South Carolina Neurosurgical Associates showed that the claimant continues to complain of low back pain with some radiation of pain into the right thigh with occasional radiation into the left thigh. Therefore, a discogram was scheduled which revealed degenerative disc disease at the L5-S1 level with reproduction of concordant pain in the low back. Dr. Holbrook indicated that the claimant has failed to respond satisfactorily to conservative measures. He recommended surgical intervention to include a lumbar laminectomy with discectomy and posterior lumbar interbody fusion with bilateral screw instrumentation at the L5-S1 level.

On October 19, 2006, the claimant was hospitalized and underwent a lumbar interbody fusion at the L5-S1 level with instrumentation. The claimant had no significant complications during surgery. Her pain was controlled with narcotics and she performed out of bed activity the following day. The claimant was able to ambulate in the halls and was stable on postoperative day two. She showed no signs of neurological impairments. She was also able to perform simple activities of daily living on discharge. Post operative x-rays of the lumbar spine showed lower lumbar fusion. The claimant's postoperative diagnosis was degenerative lumbar disc disease.

Follow-up notes from Dr. Holbrook on April 9, 2007, showed that the claimant reported no radicular leg pain. Dr. Holbrook noted there was no focal motor or sensory deficit in the lower extremities. Dr. Holbrook opined that the claimant could do sedentary type work. X-rays of the lumbar spine showed satisfactory appearance of the construct at the L5-S1 level. Office notes from Dr. Holbrook on October 15, 2007, showed that the claimant reported soreness in the low back with no radicular leg pain. There was no focal motor or sensory deficit in the lower extremities. In November 2007, Dr. Holbrook indicated in his notes that the claimant has been undergoing physical therapy and using Darvocet and Soma which has overall helped her symptoms. She ambulated with a cane, but is able to ambulate without the cane. Dr. Holbrook again noted no focal motor or sensory deficit in the lower extremities. Dr. Holbrook indicated in January 2008, the claimant successfully completed physical therapy and reached maximum medical improvement. At that time, Dr. Holbrook released the claimant from his care to follow up with her primary care physician.

. . .

At the June 5, 2009, hearing, the claimant testified that she has no difficulty reading, writing, or understanding English. She testified that her weight is 275 pounds, which is normal for her. She testified that her height is four feet six inches. She also testified that she has a driver's license. She stated that she drives five times a week. She testified that when she drives it is to her mother's house, the grocery store and to her daughter's school. She further testified that she is able to take care of her own personal needs, prepare meals, bathe, do laundry, do dishes, shop for groceries, and dress without assistance.

. . .

The evidence does not show persisting or significant strength deficits, circulatory compromise, neurological deficits, persisting muscle spasms, fasciculations, fibrillations, or muscle atrophy or dystrophy that are often associated with long standing, severe or intense pain or physical inactivity. The claimant is independent of activities of daily living. The claimant has not alleged any side-effects from the use of medications. While the evidence of record substantiates some restrictions on the claimant's ability to engage in work-related activities, such as heavy lifting, the evidence as a whole does not substantiate that total ability is so markedly limited as to prevent the performance of all work. The claimant did undergo surgery for the alleged impairment, which certainly suggests that her symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. The claimant takes no narcotic pain medications. She only takes 800 mg. Motrin and Tylenol Arthritis in spite of the allegations of quite limiting pain. The evidence shows that the claimant has received no treatment from her neurosurgeon since January 2008, the date he released her from his care. Dr. Holbrook even opined that the claimant is capable of sedentary work less than one year after her injury. The claimant's MRI shows good fusion result in October 2007 (Exhibit 21F). The claimant receives no specialized psychiatric treatment. She is prescribed Paxil by her primary care physician. The claimant's described activities of daily living include managing her own personal hygiene, preparing meals, cleaning, doing laundry, and talking and visiting with family members leads to a conclusion that the degree of incapacitation is not as severe as expressed in the testimony or pre-hearing statements. The claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but considering the claimant's statements concerning the intensity, persistence and limiting effects

> of her symptoms, lack of frequent emergency room visits or hospitalizations, the paucity of objective findings of abnormality, and the lack of the asserted degree of impairment by the clinical findings, I find are not entirely credible.
>
> . . .
>
> As for the opinion evidence, no physician treating the claimant has suggested specific functional limitations, other than Dr. Holbrook's limitation to sedentary exertional work. Since the alleged onset date, the objective findings and treatment notes of the claimant's treating physicians are consistent with the residual functional capacity limitations described above, as are the credible findings as to her subjective symptoms.

(Tr. 14-16).

The ALJ did not discuss nor mention the medical records from Doctors Care, HealthSouth Physical Therapy, and Progressive Physical therapy in the decision. Defendant argues that the records from these entities contain no additional opinions with regard to Plaintiff's functional limitations and asks the court to ". . . take the ALJ at his word that he 'considered the entire record including clinical findings, results of diagnostic studies, medical opinions, the claimant's subjective allegations, and the combined effect of all of the claimant's impairments.'" (Def.'s brief, p. 12). Although it appears that Dr. Holbrook may have considered the physical therapy records through January 14, 2008, the date he released Plaintiff from his care, in forming his opinion that Plaintiff could perform sedentary work, clearly the physical therapy records of treatment after January 14, 2008, and Doctor's Care records were not considered by Dr. Holbrook. The evaluation from Progressive Physical Therapy on April 24, 2008, was performed after she was involved in a car accident and indicates decreased spinal mobility, low back pain, cervical pain, and a decrease in her cervical and lumbar range of motion. These notes also reveal she was taking Motrin 800 and

Flexeril. (Tr. 376-377). The notes from Doctor's Care dated June 6, 2008, reveal she complained of chronic back pain and her medication consisted of Motrin, muscle relaxer and pain medication. (Tr. 375). The July 3, 2008, notes from Doctor's Care reveal she was diagnosed with chronic low back pain and her medication consisted of Ultram and Motrin. (Tr. 374). The notes of July 28, 2008, from Doctor's Care reveal Plaintiff weighed 307 pounds, used a cane, and was taking Ultram, Motrin and one other medication that is not legible. (Tr. 373). Therefore, these records from Doctor's Care and Progressive Physical Therapy reveal evidence of swelling, limited range of motion, use of a cane, and prescription of medication for pain. As set out above, the ALJ concluded that Plaintiff was not credible due to the "paucity of objective findings," and found that "the claimant takes no narcotic pain medications. She only takes 800 mg Motrin and Tylenol Arthritis in spite of the allegations of quite limiting pain." (Tr. 16). As set out above, the notes from Doctor's Care reveal Plaintiff was taking more than Motrin and Tylenol Arthritis and continued to complain of chronic back pain.

As to VE Hinson's vocational report, the ALJ did not mention the report in his decision. Hinson completed a report of a vocational evaluation on July 9, 2007, in which he opined that based on objective testing from a vocational viewpoint "it is unreasonable to believe that at this time an employer could rely upon Ms. Reese in any job that required consistent attendance, completion of tasks within a certain period of time, set break periods, and completion of a full 8-hour work day." (Tr. 181). Hinson set forth the testing he used to evaluate Plaintiff along with their results and his interpretations of the results. While the Defendant concedes that the ALJ should have discussed the vocational report from Hinson, Defendant asserts the failure is not fatal as the "omitted opinion would never have been entitled to significant weight." (Def.'s brief, p. 11). However, the ALJ did

not mention and/or discuss the opinion of VE Hinson as to Plaintiff's limitations and prognosis for returning to work and the weight he placed upon the report.

As the ALJ has not explained the weight he gave to VE Hinson's report and the records from Doctor's Care, HealthSouth Physical Therapy, and Progressive Physical Therapy, the Court does not know if these reports/records were even considered by the ALJ. Therefore, it is not possible for the Court to conduct a proper review of the record to determine if there is substantial evidence to support the decision. In addition, because the ALJ failed to discuss any consideration of, and weight given to, the reports discussed above, the Court cannot adequately address Plaintiff's remaining arguments as to the ALJ's decision with regard to Plaintiff's credibility and the hypothetical to the vocational expert.

Accordingly, it is ordered that this action be remanded to the Commissioner for the ALJ to address the reports and records of VE Hinson, Doctor's Care, HealthSouth Physical Therapy, and Progressive Physical Therapy, including the weight accorded to them. Further, the Commissioner should reevaluate the Plaintiff's credibility and, if applicable, obtain supplemental evidence from a vocational expert as to whether jobs exist which Plaintiff can perform, given her age, education, work experience and limitations as established by the evidence.

## V.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, speculate on a barren record devoid of the appropriate administrative analysis.  Accordingly,

For the reasons set forth above, IT IS ORDERED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

August 12, 2011  
Florence, South Carolina